# Exempting the Records of the SEC Fraud Surveillance Team from Reporting Obligations in the Privacy Act

The Securities and Exchange Commission is authorized by 5 U.S.C. § 522a(j)(2) of the Privacy Act to exempt the records of the proposed Fraud Surveillance Team from reporting obligations in 5 U.S.C. § 552a(e)(3) of the Act.

July 3, 2012

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
SECURITIES AND EXCHANGE COMMISSION

You have requested the views of this Office on whether the Securities and Exchange Commission ("SEC" or "Commission") may invoke the authority provided by 5 U.S.C. § 522a(j)(2) of the Privacy Act to exempt a proposed SEC special unit from reporting obligations imposed by 5 U.S.C. § 552a(e)(3) of the Act. *See* Letter for Virginia A. Seitz, Assistant Attorney General, Office of Legal Counsel ("OLC"), from Mark D. Cahn, General Counsel, SEC at 1 (Dec. 5, 2011) ("Request Letter").

You explained that SEC staff is contemplating recommending to the Commission that it authorize the creation of a special unit within the SEC, to be called the Fraud Surveillance Team ("FST"), which would investigate criminal violations of federal securities laws. To facilitate the FST's efforts, the staff may recommend that the Commission invoke 5 U.S.C. § 552a(j)(2), which permits an agency to promulgate a rule exempting certain records systems connected with criminal law enforcement from some of the Privacy Act's requirements. Doing so would allow the Commission to exempt the FST's records of its investigations from the reporting requirements of section 552a(e)(3), which generally requires agencies seeking information from the public to inform those from whom the information is sought of the authority for collecting the information, the uses to which it will be put, and the consequences of not providing it. *Id*.

We previously advised informally that section 552a(j)(2) authorizes the Commission to exempt the FST's record system from section 552a(e)(3). *See* E-mail for Mark D. Cahn, General Counsel, SEC, from Matthew D. Roberts, Senior Counsel, OLC, *Re: OLC's Informal Advice Regarding Your Privacy Act Inquiry of December 5, 2011* (Feb. 6, 2012, 5:42 PM). This memorandum memorializes that prior advice. *Cf.* Letter for Virginia

A. Seitz, Assistant Attorney General, OLC, from Mark D. Cahn, General Counsel, SEC at 1 (Apr. 6, 2012) (requesting written opinion).[1]

## I.

The Privacy Act sets forth certain requirements governing the collection, maintenance, use, and dissemination of personal information by federal Executive Branch agencies, *see* S. Rep. No. 93-1183, at 1 (1974); H.R. Rep. No. 93-1416, at 2 (1974), including independent agencies such as the SEC, *see* 5 U.S.C. §§ 552a(a)(1), 552(f)(1) (2006). At issue here is the requirement set forth in section 552a(e)(3), which provides that

> [e]ach agency that maintains a system of records shall . . . inform each individual whom it asks to supply information [of] . . . (A) the authority . . . which authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary; (B) the principal purpose or purposes for which the information is intended to be used; (C) the routine uses which may be made of the information . . . ; and (D) the effects on [the individual], if any, of not providing all or any part of the requested information.

The Act also provides agency heads with the authority to exempt certain systems of records from section 552a(e)(3) and other Privacy Act requirements. Most relevant here is section 552a(j)(2), which provides that

> [t]he head of any agency may promulgate rules, in accordance with the requirements [for notice-and-comment rulemaking of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b), (c) (2006)], to exempt any system of records within the agency from any part of [the Privacy Act] except [5 U.S.C. § 552a](b), (c)(1) and (2), (e)(4)(A) through (F), (e)(6), (7), (9), (10), and (11), and (i) if the system of records is . . . maintained by an agency or component thereof which performs as its principal function any activity pertain-

---

[1] In preparing this opinion, we sought the views of the Office of Management and Budget ("OMB"), which is charged with "prescrib[ing] guidelines and regulations for the use of agencies in implementing the provisions of" the Privacy Act and "provid[ing] continuing assistance to and oversight of the implementation of" the Act "by agencies." 5 U.S.C. § 552a(v). OMB indicated that it had no objections to the informal advice we previously provided to you.

ing to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of . . . information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual.

As you explained in the Request Letter (at 2 & nn.2–3), the SEC is authorized to investigate all conduct that may violate the federal securities laws, and every "willful" violation of those laws constitutes a criminal offense. *See* 15 U.S.C. § 77t(a) (2006) (authority to investigate potential violations of the Securities Act of 1933); 15 U.S.C. § 78u(a)(1) (Supp. IV 2010) (same for the Securities Exchange Act of 1934); 15 U.S.C. § 80a-41(a) (2006) (same for the Investment Company Act of 1940); 15 U.S.C. § 80b-9(a) (2006) (same for the Investment Advisers Act of 1940); 15 U.S.C. § 77x (2006) (criminal penalty for willful violation of the Securities Act); 15 U.S.C. § 78ff (2006) (same for the Securities Exchange Act); 15 U.S.C. § 80a-48 (2006) (same for the Investment Company Act); 15 U.S.C. § 80b-17 (2006) (same for the Investment Advisers Act). Although the SEC may investigate conduct that it suspects is criminal and may take action to remedy civil violations, the Commission cannot prosecute criminal violations. Instead, if the SEC finds evidence of a potential criminal violation, the Commission is authorized to transmit that evidence to the Department of Justice ("DOJ") or other criminal authorities, as appropriate, for possible criminal prosecution. *See* 15 U.S.C. § 77t(b) (2006) (Securities Act); 15 U.S.C. § 78u(d)(1) (2006) (Securities Exchange Act); 15 U.S.C. § 80a-41(d) (2006) (Investment Company Act); 15 U.S.C. § 80b-9(d) (2006) (Investment Advisers Act); Request Letter at 2, 3, 6; *see generally SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376–77 (D.C. Cir. 1980) (describing SEC's role in investigating possible criminal violations of the securities laws and making referrals to DOJ).

To enhance the Commission's ability to identify, investigate, and facilitate prosecution of criminal violations of the securities laws, SEC staff is considering recommending the creation of the Fraud Surveillance Team. The FST's primary mission would be to identify ongoing criminal violations of the federal securities laws, to develop evidence of such violations, and to refer that evidence to criminal law enforcement authorities

for further investigation and possible criminal prosecution. Request Letter at 3. SEC staff contemplates that a significant part of the FST's investigative efforts would involve contacting individuals suspected of conducting criminal securities fraud schemes through e-mail, mail, or telephone. *Id*. at 3–4. FST investigators would pose as potential investors in the schemes and seek information from the promoters in an attempt to develop evidence to support criminal prosecutions. *Id*. at 4.

A cadre of SEC staff members would be designated to serve on the FST and would be specially trained and separately supervised in connection with their FST activities. Request Letter at 4–5.[2] The FST would undertake an investigation only if its staff had a bona fide basis to believe that the targets were engaged in conduct amounting to a criminal violation of one of the securities laws. *Id*. at 4. The FST would maintain the information that it collected in its investigations in a separate system of records, which would not be utilized for other purposes and would not be generally accessible to Commission staff performing non-FST duties. *Id*. at 5; E-mail for Matthew D. Roberts, Senior Counsel, OLC, from George S. Canellos, Director, New York Regional Office, SEC (Dec. 22, 2011, 5:02 PM) ("Follow-up E-mail"). Limited, summary information in the FST records system—for example, a description of the general nature of the information that prompted the investigation, the persons or entities contacted, and the other investigative steps taken—would, however, subsequently be recompiled into another SEC records system or systems, which would be more broadly available to Commission staff. Request Letter at 5 & n.9; Follow-up E-mail.

---

[2] At least initially, the members of the FST would be drawn from the enforcement and inspection staffs of the Commission's New York and Miami Regional Offices. Because their duties for the FST probably would not require all of their time, FST staff members would also continue to perform their existing enforcement and inspection duties on a part-time basis. Those duties would not, however, include work on any civil investigation that arose from or related to evidence gathered by the FST. FST staff members would be under the immediate supervision of individuals at the level of Assistant Director in the SEC's Enforcement Division, who also would not participate in or supervise any civil investigation that arose from or related to evidence gathered by the FST. Those supervisors would, in turn, be subject to supervision by the directors of the New York and Miami Regional Offices, who currently are former federal prosecutors. *See* Request Letter at 4–5 & n.8; E-mail for Matthew D. Roberts, Senior Counsel, OLC, from Brian A. Ochs, Counsel to the General Counsel, SEC (Mar. 5, 2012, 12:27 PM).

When conducting an investigation, FST staff would consult on a regular basis with DOJ, as well as relevant state or local prosecutors, and those criminal law enforcement authorities would have continuous and open access to the FST's records system. Request Letter at 4; Follow-up E-mail. The FST would generally make a referral to criminal authorities at the conclusion of its investigation if it determined that sufficient grounds existed for criminal prosecution. Request Letter at 4. Civil enforcement staff at the SEC would neither participate in FST investigations nor have standing access to FST records. Follow-up E-mail.[3] Although the FST would be able to make referrals to civil enforcement staff, the FST would do so only after completing its criminal investigation; and, after a referral, the FST would not undertake any further investigation. *Id.*; Request Letter at 4.

## II.

As you explained in the Request Letter, SEC staff believes that the undercover operations described above would be impeded if FST members had to identify themselves as associated with the SEC and provide the notifications required by section 552a(e)(3) when contacting individuals suspected of fraud. Request Letter at 1, 4. In your view, section 552a(j)(2) of the Privacy Act authorizes the Commission to exempt the FST's system of records from section 552a(e)(3), thus relieving FST investigators of the obligation to provide the targets of their investigations with the notifications specified in that provision. Request Letter at 5–8. We agree.[4]

---

[3] As discussed in note 2, some FST staff members would also independently perform civil enforcement duties unrelated to their work on the FST. In this opinion, we use the term "civil enforcement staff" to refer to enforcement staff members while they are in the course of performing civil enforcement duties.

[4] The exemption in section 552a(j)(2) is not self-executing. As we explained in our informal advice, the Privacy Act requires that the Commission satisfy certain procedural requirements of the APA in order to invoke the exemption, and the Privacy Act itself imposes additional procedural requirements. *See* E-mail for Mark D. Cahn, General Counsel, SEC, from Matthew D. Roberts, Senior Counsel, OLC, *Re: OLC's Informal Advice Regarding Your Privacy Act Inquiry of December 5, 2011* (Feb. 6, 2012, 5:42 PM); *see generally* 61 Fed. Reg. 6428, 6435–39 (Feb. 20, 1996) (OMB guidance discussing the Privacy Act's publication and reporting requirements). Commission staff charged with implementing the FST proposal would be required to ensure compliance with the

### A.

The proposal described in your letter satisfies the substantive requirements for the section 552a(j)(2) exemption, because (1) the FST would be a separate "component" of the SEC; (2) the FST's "principal function" would be an "activity pertaining to the enforcement of criminal laws"; and (3) the FST's records system would "consist of . . . information compiled for the purpose of a criminal investigation . . . and associated with an identifiable individual." 5 U.S.C. § 552a(j)(2).[5]

### 1.

The Privacy Act does not define the term "component," and we are not aware of any other federal statute that specifies the characteristics necessary for a subdivision of an agency to be considered a "component." The ordinary meaning of the word "component" is "a constituent part." *Webster's Third New International Dictionary* 466 (1993) ("*Webster's Third*"); *The Random House Dictionary of the English Language* 419 (2d ed. 1987) ("*Random House*"). The language of section 552a(j)(2), however, suggests Congress had a particular type of component in mind. By referring to an "agency or a component thereof" whose "principal function" pertains to the enforcement of the criminal laws, section 552a(j)(2) suggests that a "component" must not only be a constituent part of an agency but also have a "principal" function of its own, namely engaging in the enforcement of criminal law. We believe that the FST would satisfy these criteria and thus qualify as a "component" of the SEC.

The FST would have its own particular mission within the context of the SEC as a whole. As we explain in more detail below, while the SEC enforces the securities laws generally, the FST's principal purpose would be criminal investigation. In addition, the FST would have a designated staff and an independent records system that would not be broadly acces-

---

applicable procedural requirements of the Privacy Act and the relevant portions of the APA.

[5] Your letter assumes that FST staff would be required to provide the section 552a(e)(3) notifications if the exemption were not invoked. *See* Request Letter at 3 & n.6. We make the same assumption in this opinion. Other agencies engaged in similar undercover activities have suggested that section 552a(e)(3) would not apply to such activities, *see id.*, but we have not considered the analyses of those agencies or assessed their validity.

sible to other SEC staff. Although FST staff would likely also perform other duties within the agency, we do not believe that the part-time nature of its staff would preclude the FST from qualifying as a "component," because the FST would have its own special function and would be an official, enduring "constituent part" of the SEC.

Moreover, as an agency subdivision that specialized in investigative activities, the FST would resemble several other agency units that courts have treated as "components" under section 552a(j)(2). *See, e.g.*, *Seldowitz v. Office of the Inspector Gen.*, No. 00-1142, 2000 WL 1742098, at *4, 238 F.3d 414 (Table) (4th Cir. Nov. 13, 2000) (Office of the Inspector General ("OIG") in the Department of State); *Gowan v. U.S. Dep't of the Air Force*, 148 F.3d 1182, 1189–90 (10th Cir. 1998) (Office of Special Investigations in the Department of the Air Force); *Carp v. Internal Revenue Serv.*, No. 00-5992, 2002 U.S. Dist. LEXIS 2921, at *16–17 (D.N.J. Jan. 28, 2002) (Criminal Investigation Division in the Internal Revenue Service ("IRS")); *Anderson v. U.S. Postal Serv.*, 7 F. Supp. 2d 583, 586 n.3 (E.D. Pa. 1998) (Postal Inspection Service in the U.S. Postal Service), *aff'd*, 187 F.3d 625 (Table) (3d Cir. 1999). The FST would also resemble other units that agencies have viewed as "components" in regulations claiming the section 552a(j)(2) exemption. *See, e.g.*, 32 C.F.R. § 701.128(m) (2011) (Naval Criminal Investigation Service in the Department of the Navy); 40 C.F.R. § 16.11(c) (2011) (Criminal Investigation Division and National Enforcement Investigations Center in the Office of Criminal Enforcement, Forensics, and Training of the Environmental Protection Agency).[6]

## 2.

We also conclude that the FST would have as its "principal function" an "activity pertaining to the enforcement of criminal laws." 5 U.S.C. § 552a(j)(2). The FST's principal activities would be investigating poten-

---

[6] We note that entities viewed as separate agency "components" are usually established through some formal mechanism, such as an internal agency order. *See, e.g.*, *Chairman Levitt Announces Two Initiatives to Improve Investor Protection*, SEC News Release No. 95-50, 1995 WL 119773 (Mar. 22, 1995) (announcing SEC Chairman's creation of the Office of Compliance, Inspections, and Examinations). We therefore recommend that the mechanism used to create the FST entail the same level of formality that the SEC generally uses in creating Commission components.

tial criminal violations of the securities laws, developing evidence of such violations, and providing that evidence to the appropriate authorities for possible criminal prosecution. Request Letter at 3. We need not decide whether those activities would themselves constitute criminal law enforcement, because the section 552a(j)(2) exemption is applicable so long as a component's principal activities "pertain[] to" criminal law enforcement. 5 U.S.C. § 552a(j)(2). Moreover, the statute makes clear that criminal law enforcement includes the "activities" of both "police" and "prosecutors." *Id.*

The FST's activities—the identification of potential criminals and the development of the evidence necessary to prosecute them—clearly would "pertain[] to" the activities of "police" and "prosecutors," because the FST's investigative activities would assist police and prosecutors in performing their law enforcement duties of conducting investigations and bringing criminal prosecutions. Moreover, numerous courts have concluded that other agency components that engage in similar investigative activities qualify for the section 552a(j)(2) exemption. *See, e.g.*, *Seldowitz*, 2000 WL 1742098, at *4 (State Department OIG); *Gowan*, 148 F.3d at 1189–90 (Air Force Office of Special Investigations); *Carp*, 2002 U.S. Dist. LEXIS 2921, at *16–17 (IRS Criminal Investigation Division); *Anderson*, 7 F. Supp. 2d at 586 n.3 (Postal Inspection Service).

It is true that assistance to criminal law enforcement would not be the FST's only activity. After the FST completed a criminal investigation and made any referrals to criminal law enforcement authorities that it considered appropriate, the FST could also make a referral to SEC civil enforcement staff. Request Letter at 4; Follow-up E-mail. The civil enforcement staff would then determine (possibly after further investigation in which the FST would not participate) whether a civil enforcement action was warranted. Follow-up E-mail. In our view, however, the prospect that the FST might refer some matters for potential civil enforcement does not undermine the conclusion that the FST's "principal" function would be assisting criminal law enforcement. "Principal" means "first or highest in rank, importance, value, etc."; "chief"; or "foremost." *Random House* at 1539; *see also Webster's Third* at 1802 (defining "principal" as "most important, consequential, or influential"). Assisting criminal law enforcement would be the FST's "chief" and "most important" function. The FST would only undertake an investigation if it had reason to believe that the targets were engaged in criminal conduct. Request Letter

at 4. Criminal law enforcement authorities would have an active and ongoing role in the FST's investigations and standing access to the FST's records system, but the SEC's civil enforcement staff would not. *Follow-up E-mail.* And the FST would refer matters for possible civil enforcement actions only upon completion of its criminal investigations, after which the FST would perform no further investigative activities. *Id.*[7]

### 3.

We further believe that the FST's records system would consist of "information compiled for the purpose of a criminal investigation" and "associated with an identifiable individual." 5 U.S.C. § 552a(j)(2)(B). As discussed above, the records system would consist of files compiled by the FST to carry out its principal function of investigating potential criminal violations of the securities laws, and the system would be directly accessible only to FST staff (and their supervisors) for use in connection with their criminal investigations, and to criminal law enforcement authorities participating in those investigations. In our view, these circumstances suffice to establish that the information in the system would be "compiled for the purpose of a criminal investigation." *Id.* The information in the system also would be "associated with an identifiable individual," *id.*, because it would be associated with the individuals whom the FST investigators contacted in the course of their criminal investigations.

In two limited circumstances, information in the FST's records system would be shared with others in the SEC for purposes other than criminal investigation and enforcement: At the conclusion of the FST's criminal investigation, information that supported the existence of a civil violation of the securities laws would sometimes be referred to the SEC's civil enforcement staff for possible further investigation and civil enforcement action. *See* Request Letter at 4. In addition, a limited amount of summary

---

[7] Given our conclusions that the FST's principal function would be assisting criminal law enforcement, and that any involvement in civil law enforcement would be only a secondary function, we need not decide whether a component may have more than one "principal function" within the meaning of section 552a(j)(2), or whether the exemption applies when "only *one* of the [component's] principal functions . . . [is] the investigation of criminal conduct." *Alexander v. Internal Revenue Serv.*, No. 86-0414-LFO, 1987 WL 13958, at *4 (D.D.C. June 30, 1987); *see Anderson v. Dep't of the Treasury*, No. 76-1404, slip op. at 6 (D.D.C. filed July 19, 1977) (concluding that section 552a(j)(2) does not apply in that circumstance).

information from the FST's system would be recompiled into a separate records system that would be used by SEC staff for market monitoring and civil enforcement. *Id*. at 5 & n.9; *see* Follow-up E-mail. In our view, however, those additional uses of the information in the FST's records system would not alter the conclusion that the system would be compiled for the purpose of criminal investigations. The FST system would be created for criminal enforcement purposes, and the sharing of the data in the system with civil enforcement staff would merely be incidental to, or an ancillary consequence of, the system's creation. In addition, section 552a(j)(2) does not state that the information must be compiled for the "sole" or even "principal" purpose of a criminal investigation.

The Privacy Act as a whole supports our conclusion. The Act makes clear that records eligible for the criminal law enforcement exemption may be disclosed to others in the agency with a need for the records, which would include SEC employees using the FST records for market monitoring and civil law enforcement purposes. Section 552a(j)(2) indicates that the provisions of the Privacy Act governing disclosure apply to records that are eligible for the exemption. *See* 5 U.S.C. § 552a(j) (listing 5 U.S.C. § 552a(b)(1)–(12), the Act's disclosure provisions, as provisions from which the records may not be exempted). The Act's disclosure provisions, in turn, state that records may be disclosed for a variety of purposes, including "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties." 5 U.S.C. § 552a(b)(1). In the case of the SEC, which is charged with ensuring compliance with the securities laws and is empowered to bring enforcement actions for civil violations of those laws, such officers and employees would include Commission employees who needed the information compiled by the FST to carry out their monitoring and civil enforcement responsibilities. The Privacy Act also provides that records may be disclosed on request to another agency or government entity "for a civil or criminal law enforcement activity if the activity is authorized by law." 5 U.S.C. § 552a(b)(7). We can think of no reason why Congress would permit disclosure outside the agency for civil law enforcement purposes but forbid disclosure inside the agency for the same purposes.

Case law also supports our analysis. For example, in *Seldowitz*, the Fourth Circuit concluded that criminal investigation records compiled by the State Department's OIG were protected by the section 552a(j)(2)

exemption, even though information in the records was used to pursue a civil prosecution, because the "OIG investigators contemplated a possible criminal prosecution." 2000 WL 1742098, at *3. And, in *Doe v. Federal Bureau of Investigation*, 936 F.2d 1346, 1356 (1991), the D.C. Circuit held that "information contained in a document qualifying for [the] subsection (j) . . . exemption . . . does not lose its exempt status when recompiled in a non-law enforcement record if the purposes underlying the exemption of the original document pertain to the recompilation as well."[8]

Additionally, our interpretation is consistent with the purposes of the securities laws. As the Request Letter explained, investigators cannot know at the start of a criminal investigation whether they will ultimately assemble enough evidence to justify a criminal prosecution. Request Letter at 8. If they prove unable to make out a criminal case, they may nonetheless uncover sufficient evidence to establish a civil violation of the securities laws. The purposes behind the securities laws would be ill-served if the SEC were barred from using that information to stop the civil violation and obtain relief for the victims.

### B.

Because the SEC plans to recompile summary information from the FST's database into a separate records system that would be used for market monitoring and civil law enforcement, we also considered whether that recompilation would independently trigger the requirement in section 552a(e)(3) that investigators provide notifications when collecting the information. In our view, the notification requirement would not be triggered. The information would be initially entered into the FST's records system, and only subsequently recompiled from that system into the other system, which would be used by other SEC staff in performing their statutorily assigned duties. As we noted in Part II.A.3, the Privacy Act contemplates that information from exempted records systems will be shared within the agency for other purposes, *see* 5 U.S.C. § 552a(b)(1); in our view, recompilation into another database is a legitimate means of effectuating such information-sharing. This conclusion is supported by interpretive guidance issued by the Office of Management and Budget, which states that "records which are part of an exempted

---

[8] We discuss the applicability of this standard to your proposal in Part II.B below.

system may be . . . incorporated into . . . non-exempt records systems" without losing their exempt status. 40 Fed. Reg. 28,948, 28,971 (July 9, 1975).[9]

The D.C. Circuit suggested in *Doe* that recompilation of a criminal law enforcement record into another non-law enforcement records system would vitiate an otherwise properly invoked section 552a(j)(2) exemption unless the reasons for exempting the criminal law enforcement records also justified exempting the recompiled records. *See* 936 F.2d at 1356. Assuming that this condition on the applicability of the section 552a(j)(2) exemption exists, the recompilation contemplated by your proposal would satisfy the condition. The reason for exempting the FST's investigative records system from the section 552a(e)(3) notification requirements is that notice would compromise the FST investigations, because the targets of those investigations would not provide the requested information if they knew that it was being collected for possible criminal prosecutions. The same rationale would apply to the recompiled records, which would be used largely for civil law enforcement purposes: the sources of the information would also likely be unwilling to provide it if they knew that it would be used for civil law enforcement. Accordingly, we believe that recompiling summary information from the FST's records system into a records system used for civil law enforcement and related purposes would not preclude reliance on section 552a(j)(2) to exempt the FST's information collection from the section 552a(e)(3) notification requirements.

### III.

In sum, we conclude that section 552a(j)(2) would permit the Commission to exempt the FST's records system from section 552a(e)(3), provided that the Commission complies with the procedural requirements imposed by the Privacy Act.

VIRGINIA A. SEITZ
*Assistant Attorney General*
*Office of Legal Counsel*

---

[9] We need not and do not decide whether the answer would be different if the information were initially entered simultaneously into two systems, one maintained by the FST for criminal investigations and another used for other purposes.